MARTIN H. SULLIVAN, APPELLANT, vs. JOHN B. WALTON, TAX COLLECTOR OF THE CITY OF PENSACOLA, APPELLEE.

1. Under the law of municipal corporations in this State they are authorized upon a vote of the electors to issue bonds to meet municipal expenses or for any municipal purpose. The statutes require that the amount to be issued, as well as the issuing of such bonds, shall be thus submitted to the electors, and in the event a required majority is given makes it the duty of the City Council to assess and collect such taxes from the citizens as are necessary for the payment of the interest as well as for the final payment of the bonds. The tax so directed to be levied is not a "special tax," within the meaning of chapter 3313, Laws of 1881.

2. There are outstanding bonds of a city which the city desires to compromise by an issue of new bonds to take up the outstanding bonds. The question of the issue of the bonds and the amount to be issued is submitted to the qualified electors of the city; the required majority is given for the issue and the amount to be issued; the statute in this event made it lawful for the bonds to be issued: *Held,* That the recital by the Mayor and Council in the proclamation submitting these questions that they were assured that the old bonds would be surrendered was no condition under the law for the issuing of the new bonds, and that the new bonds thus issued, if within the amount authorized and otherwise legal in the nature of their obligation under the statute, were valid and binding obligations upon the city.

3. In such case the fact that the courts of the United States are enter-
taining jurisdiction to enforce the old bonds against the city does
not prevent the city authorities from levying a tax to pay the
new bonds to the extent to which an exchange has been made.

Appeal from the Circuit Court for Escambia county.

The facts of the case are stated in the opinion.

*S. R. Mallory* for Appellant.

*W. A. Blount* for Appellee.

Mr. Justice Westcott delivered the opinion of the
court.

The cases of Basnett and others against the City of
Jacksonville, one of which is reported in 19 Fla., 664, and
the other in the same report as that containing this case,
(p. 525,) disposes of all of the questions raised in this case
as to the constitutionality of chapter 3477, Laws, under
which the tax for general municipal purposes was here as-
sessed and levied by the City of Pensacola. The only
other tax to which objection is urged here by appellant, is
the tax assessed and levied to pay interest upon new bonds
of the city, issued in lieu of old bonds.

Neither of the parties to this appeal give us a statement
of the case, and we are therefore to some extent embar-
rassed in the statement of it. There seems to have been
an agreement to refund the bonded debt of the city made
prior to the 8th of December, 1882, but we cannot find it
in this record ; so also an ordinance was passed by the
Board of Aldermen of the City, entitled an ordinance to
levy and collect a special tax to pay the interest upon the
bonded debt of the City of Pensacola, under the agreement
for refunding, approved December 8, 1882. Chapter 3313
of the Laws, which was approved March 3, 1881, provided

" that from and after the passage of this act it shall be un-
lawful for any City or Town Council to pass any ordinance
or resolution imposing a special tax for any purpose with-
out first giving notice by publication in a newspaper for at
least thirty days, or by posting for thirty days in one or
more public places in such city or town." It is admitted
that the notice here required was given of the first ordi-
nance passed in reference to this debt. This ordinance
fixed the tax to be levied at one per cent. upon the real and
personal property of the city. In March, 1883, this ordi-
nance was amended by reducing the tax to five mills instead
of one cent. The point is now made that not only must
there have been notice of the original ordinance, to levy
and collect a tax of one per cent., but that there should
have been notice also of the amending ordinance reducing
it. Our view of this matter is that this was no " special "
tax, within the meaning of the statute.

Sections 18 and 19 of chapter 1688, Laws, as amended
by sections 6 and 7 of chapter 3024, Laws, and section 20
of chapter 1688, Laws, regulated the matter of the issue
of bonds by cities, and the assessing and collecting of taxes
for the payment of the principal and interest on the same.
Section 18, as amended by section 6, authorizes the City
Council, with the approval of two-thirds of the registered
voters of the city actually voting, to issue bonds for vari-
ous purposes, among which, we think, is included the pur-
pose for which the bonds here were authorized, viz: a com-
promise of an existing bonded debt, and an issue of new
bonds for a smaller amount of principal. What the inter-
est of the old bonds was, we cannot ascertain from this
record. Section 19 as amended by section 7, requires that
the amount to be issued, as well as the issuing of such
bonds, shall be submitted to the qualified electors of the
city in such manner and after such public notice as may be

deemed necessary by the City Council. Section 20 of chapter 1688 makes it the duty of the City Council to assess and collect such taxes from the citizens and upon the property within the city, as is necessary for the payment of the interest upon, as well as the final payment of said bond, with a proviso that all property shall be taxed upon the principle established by State taxation.

We have here legislation authorizing the creation of an indebtedness by the corporation, and the Legislature in express terms fixes the amount to be levied, that is, such a sum as is necessary to pay interest and principal of the bonds, both of which are ascertainable by reference to the municipal records. The citizen knows the amount already. He has voted upon the question. This is not a special tax "imposed by an ordinance or resolution of a city or town council." It is an annual tax, imposed under the statute, to meet an acknowledged and fixed indebtedness of the city, as much so as any other expense which the annual taxes are expected to meet. A special tax, within the meaning of this statute, is for a sum not embraced in the usual annual expenses, and incurred by the city under its general powers, the purpose of the Legislature being to require the municipality to keep the people informed in the matter of the imposition of taxes to pay particular expenses not belonging to the usual annual budget of the city. An annual or other special notice is not requisite to the validity of an ordinance providing for the collection of a tax to pay the interest and principal of the bonded debt of the city.

Objection is urged to the tax because all the holders of the old bonds were to be included in the compromise under the proclamation of the Mayor, and if they are not so included, there is no authority in the city to tax for the new bonds. The notice given or proclamation made, does not, in terms,

recite as a condition to issuing the new bonds that the holders of all the old bonds shall accept the new bonds. The question of issuing new bonds was submitted to the people under a proclamation of the Mayor, in which the Mayor and " Board of Aldermen " recite that " the Board has satisfactory assurances that the holders of bonds and coupons of the City of Pensacola," issued under an act approved January 3d, 1853, as well as the holders of judgments founded on said bonds, are willing to accept in discharge and satisfaction thereof new bonds upon the following *terms.* Then follows the *conditions* or " terms " upon which the exchange is to be made. The new bond was to be issued at the rate of forty cents for each dollar of the old bonds, coupons and judgment with accrued interest. They were to be payable in thirty years at rates of interest named, and the time and place of payment of bonds and coupons were to be fixed by the Mayor. That the issue was not to exceed $280,000, and that a special tax shall be annually levied, pursuant to the provisions of the second section of the act of the Legislature of January 3, 1853, to pay the coupons, the coupons to be receivable in the payment of such tax, as well as all other city taxes, fines, penalties, forfeitures and licenses. It is thus seen that the recital constituted no part of the " terms " or condition upon which the new issue is to be made, the recital being merely that the Board were assured that the holders of the old issue of bonds would accept such bonds as to the issue of which the electors of the city were to express their willingness or dissent.

These proceedings to authorize new bonds, were had under sections 18 and 19 of chapter 1688, Laws, amended by sections 6 and 7 of chapter 3024, Laws; and section 20 of chapter 1688. These sections contain the conditions upon which bonds are to be issued. The questions to be

submitted to the qualified electors are the issue of the bonds, the amount to be issued, and the law is that "should two-thirds of the votes actually cast by said electors be in favor of issuing the bonds and the amount proposed to be issued, then and in that event it shall be lawful for them to be issued, otherwise not." How the tax was to be assessed, what the tax was, whether special or otherwise, whether it was under one law or another, and whether all the holders of the debt, for the retirement of which the new bonds were to be issued, were or were not willing to make the exchange, were not questions to be submitted to the electors. These things were controlled by the general law of municipal corporations, and the statutory power of the Mayor and and City Council. As a matter of course the bond must have been for a municipal purpose or expense. The matter of the assessment and collection of the tax was, by the law, section 20, ch. 1688, Laws, left to the council after the bonds were authorized. The electors were not required to vote as to that.

The issue of new bonds, we think, is legal. As to them, the Courts of the United States are not entertaining jurisdiction, and so long as the council keeps within the terms of section 20, chapter 1688, Laws, and the other statutes, in the assessing and collecting the tax, the courts should not interfere. Whether, therefore, a court of equity has jurisdiction or not, the order of the Circuit Court is right.

Looking at the whole matter, we doubt whether one citizen tax-payer alone, in a suit to which neither the city or its bondholders are parties, and to which only himself and an officer of the city are parties, can be heard to assail and set aside a compromise of a bonded indebtedness of the city by which the debt is to be reduced hundreds of thousands of dollars.

The order denying the injunction is affirmed, and the case will be remanded for further proceedings.